## McLain v. Buliner.

ESTOPPEL: *Equitable.*

> A., for the consideration of twelve dollars relinquished to B., by a verbal contract, his right to purchase a lot belonging to a railroad company, and also a claim which he represented that he had for improving the lot. At the same time he advised B. to purchase the lot from the company and promised not to purchase it himself. He then had no preferred right of purchase or legal claim to the lot which could be transferred by him or acquired by B., and there was no evidence of fraudulent intent or concealment. B. subsequently applied to a local agent to buy the lot and made a payment under an agreement entered into with him for its purchase. The agent was authorized to receive applications to purchase the lands of the company, but not to effect sales. Soon after making such payment B. took possession of the lot and erected on it a house. A. afterwards purchased the lot from the company and having obtained a deed therefor, brought ejectment against B. to recover it. *Held:* That A. was not estopped from setting up in such action the title thus obtained.

APPEAL from *Miller* Circuit Court in Chancery.
C. E. MITCHEL, Judge.

*J. M. Montgomery* and *Oscar D. Scott* for appellant.

In order to constitute an estoppel by conduct *all* of the following elements must actually or presumably be present:

"1. There must have been a false representation or concealment of *material* facts.

"2. The representation must have been made with *knowledge* of the facts.

"3. The party to whom it was made must have been *ignorant* of the truth of the matter.

"4. It must have been made with the *intention* that the other party should act upon it.

"5. The other party must have been *induced* to act upon it." *Bigelow on Estoppel, 3d ed., p. 484.*

In this case there is no proof that Ritchie made any *legally* false representation, and conclusively it is shown that if any was made defendants were not ignorant of the truth of the matter. *Ib., p. 486, 520; 46 Tex., 371; 71 Ill., 185.*

There must be some right or title existing in the party sought to be estopped, as estoppels *in pais* do not apply to after-acquired titles. *Bigelow on Est., p. 525; 22 Cal., 468; 36 Me., 176; 55 Mo., 492; 106 U. S., 447.*

Because, 1. If there was any representation made by Ritchie, it was in effect a representation or future promise, in effect, that he would not, but that defendants might, purchase the lot in controversy from the railway company.

2. That defendants had full knowledge of the true state of the title at the time of the alleged estoppel.

3. That the said Ritchie had no title at that time upon which an estoppel could act, or the title in Ritchie sought to be estopped was an after-acquired title. We submit the demurrer to the cross-complaint should have been sustained.

It is the title the estoppel is against, and in this case there was none in Ritchie until the execution of the deed.

It appears from the proof:

1. That Ritchie made no false representation.

2. That defendant knew the true state of the title.

3. That the title sought to be estopped was after-acquired.

*John B. Jones* also for appellant.


*L. A. Byrne* for appellees.

This is a case of estoppel by waiver, and not by conduct or representation. It is necessary that both parties should know all the facts. See *Bigelow on Est., 4th ed., 639, 640; id., pp. 447, 552, 633.*

One who encourages another to buy land and expend money upon it cannot set up a better title in himself to avoid the purchase. *53 Penn. St., 348.* Estoppel operates to the abandonment of an existing right. *96 U. S., 544.* See, also, *24 Fed. Rep., 191; 79 Ky., 148; 33 Penn. St., 307; 35 id., 523; 106 U. S., 30; 3 Hill (N. Y.), 216; 3 Tiff. (N. Y.), 518; 34 How. Pr., 429; 9 Wall., 254; 100 U. S., 578.*

The sale and waiver by Ritchie estops Ritchie from ever thereafter asserting present or after-acquired title to the property. *Herman Est., vol. 2, secs. 650, 651, 668, 669, 781–2; 12 Wall., 358; 47 Ark., 112.*


J. W. BUTLER, Sp. J. The following statement is deemed sufficient to a correct understanding of this case.

On the 31st day of January, 1878, James Ritchie, since deceased, obtained from the St. Louis, Iron Mountain and Southern Railway Company a deed to lot number five (5), in block number seventy-three (73), in the town of Texarkana, Arkansas. Sarah L. Buliner, appellee, prior to the date of Ritchie's deed, had erected upon the lot a two-story frame building, under the claim, that in the year 1876 James Ritchie had relinquished to her his right to purchase the lot, as also his claim for improvements made thereon, and had promised that he would not purchase it himself from the owners, the St. Louis, Iron Mountain and Southern Railway Company. She

further claimed that after securing Ritchie's interest in the lot, she contracted with the local agent of the railway company, at Texarkana, to purchase it, and immediately thereafter began to build upon it. About January, 1877, the building was completed and she took possession of the lot and the improvements, without protest or objection on the part of James Ritchie.

On the 24th of October, 1878, Ritchie brought an action of ejectment in the Miller Circuit Court against Bero Buliner, and Sarah L. Buliner, his wife, and others in possession of the property.

Bero and Sarah L. filed an answer and cross-complaint and a counter-claim making the St. Louis, Iron Mountain and Southern Railway Company a party defendant to the counter-claim. The cause was transferred to the equity docket. Ritchie demurred to the counter-claim. Pending the suit Ritchie died and the cause was revived and proceeded in the names of Lucy Ritchie, the widow, and H. N. McLain, the administrator of the deceased. The cross-bill was dismissed as to the St. Louis, Iron Mountain and Southern Railway Company.

At the July term, 1885, the court overruled the demurrer to the counter-claim and decreed that Ritchie, in his lifetime, had a preference right to purchase the lot in controversy from the St. Louis, Iron Mountain and Southern Railway Company, the owner of the lot, and that he held a claim for improvements placed thereon; that Ritchie sold to Sarah L. Buliner, for a valuable consideration, his claim on the lot and relinquished to her his right to purchase it from the railway company. That the heirs and assignees of James Ritchie are estopped from setting up the title which he acquired to the lot from the railway company as against Sarah L. Buliner. That Lucy Ritchie holds the title to the lot, acquired by purchase from her husband, in trust for the said Sarah L., and that the said Lucy Ritchie make and execute a deed conveying to Sarah L. Buliner the title to the lot. It was further decreed

McLain v. Buliner.

that Sarah L. Buliner recover from the said Lucy Ritchie the sum of $1000 for the rental value of the property during the time she held possession.

EQUITABLE ES- TOPPEL.

Counsel concede that the issues involved in this case are narrowed down to a single question, that of an equitable estoppel.

It is insisted for the appellees that the title of Lucy Ritchie to the lot in controversy cannot be set up against Sarah L. Buliner because of certain promises made by Ritchie, and because he had transferred to her all claim and right to the lot for improvements, and had relinquished his right to purchase from the railway company.

. It therefore becomes necessary to ascertain whether or not the doctrine of equitable estoppel, wide and varied in application as it is, applies in this case. There was no written contract or agreement between Ritchie and appellees. The case must be determined upon the promises and representations and the alleged parol relinquishment of Ritchie.

Waiving the question of the validity of certain depositions, to which one or the other parties, respectively, took exceptions, we think the evidence establishes that the title to the lot in controversy, at the time Ritchie relinquished his claim to Sarah L. Buliner, was in the St. Louis, Iron Mountain and Southern Railway Company. That Ritchie represented he had a claim for improvements made on the lot, which claim he transferred to Sarah L. Buliner for the consideration of twelve dollars; that Ritchie advised Sarah L. Buliner to purchase the lot and to build upon it, representing that it would be a good investment; that he could not buy it himself as he had not paid for the lot adjoining which he occupied. He assured her that he would not purchase the lot himself, and this promise he frequently reiterated to Bero Buliner, the husband of said Sarah L., as also to other persons.

After Ritchie had relinquished his claim to the lot, Sarah L. Buliner, in September, 1876, applied to the local agent of the railway company at Texarkana, to purchase the lot. The agent informed her that the lot could be bought for $200, payable one-third in cash, one-third in twelve months, and the remainder in eighteen months. She paid to the local agent of the company ten dollars, receiving a receipt as follows;

"TEXARKANA, ARKANSAS, September 11, 1876.

"Received from Sarah L. Buliner the sum of ten dollars, to be applied to first payment on lot 5, block 73, said lot sold Mrs. Sarah L. Buliner for the sum of two hundred dollars, with the understanding that one-third of the amount is to be paid in thirty days. If said payment is not made, money received is to be refunded and sale 'null and void.'

[Signed] "CHARLES E. BRAMBLE,
"Local Land Agent St. Louis, I. M. & S. R. Co."

The evidence discloses, that Bramble, the local agent had authority to receive applications for the purchase of railway lands, but not to effect sales. Soon after the payment of the ten dollars to the local agent of the railway company, Sarah L. Buliner took possession and commenced building upon the lot. James Ritchie was aware of the progress made in the construction of the house, and assisted the appellees to move into it when it was completed. Sarah L. Buliner made no further payment on the lot until November, 1877, when she paid the balance of the cash payment to the local agent, for which he gave a receipt as follows :

"TEXARKANA, 20th November, 1877.

"Received of Sarah L. Buliner the sum of sixty-six 66-100 dollars, the same to be applied as first payment on lot 5, in block 73, in the town of Texarkana, Arkansas, said sale made

subject to the approval of the St. Louis, Iron Mountain & Southern Railway Company.

[Signed]                              " CHARLES E. BRAMBLE,
    " Local Agent St. Louis, Iron Mountain & Southern Railway Co."

It is shown that both Bramble and Sarah L. Buliner, at the date of this last payment, had information that Ritchie, a short time before, had contracted to purchase the lot from the land commissioner of the railway company at Little Rock, who, it appears, had not been notified of the effort made by Sarah L. Buliner, in September, 1876, to purchase the lot from the local agent at Texarkana.

A witness for appellees testifies to a conversation had with Ritchie after he had obtained the deed for the lot. In this conversation Ritchie stated that he had rendered the railway company certain services, for which the company promised to compensate him. Ritchie demanded that the company should give him the lot now in controversy, and the then land commissioner of the company promised that Ritchie should have the privilege to purchase the lot for a nominal consideration, which Ritchie interpreted to be the sum of fifty dollars. In the same conversation Ritchie made complaint, stating that the railway company did not comply with the promise made to him; when he purchased the lot he had to pay more than fifty dollars for it.

This is in effect the evidence in the case, so far as it is relevant to the question of an equitable estoppel.

We do not think it is established that Ritchie, at the time of the alleged relinquishment and representations, had any preferred right or legal claim to the lot in controversy, which could be transferred by Ritchie, or acquired by Sarah L. Buliner.

At any time prior to executing the deed to Ritchie, the

railway company could have sold the property to any one desiring to purchase, or could have instituted proceedings for the possession of the lot. The evidence does disclose that Ritchie urged Sarah L. Buliner to buy the lot and put improvements upon it, that he relinquished to her his claim for grading, and promised not to buy the lot, yet, in our opinion, such expressions of intention and advice were not sufficient to induce a prudent person to rely upon them to the extent of erecting valuable buildings upon the property to which it was known that the advisor had no title.

There is no evidence that at the time Ritchie made the representations and promises, he intended to commit a fraud upon the appellees, and it cannot be assumed that he then foreknew that Sarah L. Buliner would erect a building upon the lot, that she would fail to secure the title, and finally, he would be enabled to purchase the lot for himself.

Mr. Bigelow, in his work on Estoppel, 4th edition, page 597, says:

" Under either doctrine, whether there be a knowledge or not of the true state of the title, to the land in question, the estoppel applies only to rights existing in the party at the time of the representation or admission, and he will not be precluded from setting up a paramount title, afterwards acquired from a third person."

Our attention has been called to the distinction in the rule of estoppel when the conduct of the party against whom the estoppel is alleged, should be treated as a waiver, and not as constituting a representation. Bigelow on Estoppel, 639, states that, " It should be clearly apprehended of the entire class of cases now under consideration that the conduct of the party against whom the estoppel is alleged, whether that conduct be misleading silence or outward action, should be treated as a waiver, and not as constituting a representation. Treated as a waiver, it is immaterial that the party claiming the

estopped knew the facts; waiver is not only consistent with, it is generally created upon knowledge of all the facts by both parties.

"Treated as a representation, the case would fall under the other head of estoppel by conduct and knowledge by the party alleging the estoppel, would be fatal. This difference between the two estoppels is founded upon the difference in subject matter, to be seen in the fact that in the present case parties are openly and expressly dealing with known rights; in the other case a secret concealed right is brought forward against one who has been led by the party originally owning it to believe that one has acquired it. He has not acted in good faith if he knew the facts."

Were it shown that Ritchie, at the time he urged Sarah L. Buliner to buy the property, had any legal right to the property which he concealed from her knowledge, or if he had a secret claim which the railway company recognized in respect to the sale of the property, the rule of estoppel, insisted upon by appellees' counsel would be applicable, but we find no such state of facts presented in this case. The decree of the Miller Circuit Court is reversed, the cross-action of the Buliners is dismissed, and a judgment will be entered here, in favor of Lucy Ritchie, for the recovery of the premises in controversy.

BATTLE, J., did not sit in this case.